NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0150n.06

No. 14-3665

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 25, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BRYAN A. MOBLEY, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| MIAMI VALLEY HOSPITAL, | ) | |
| | ) | |
|     Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE:** GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** For several years, Bryan Mobley worked successfully as a housekeeper at Miami Valley Hospital ("MVH") cleaning operating rooms, despite significant cognitive and physical impairments. MVH transferred him to a different housekeeping role removing trash from patient rooms on several floors of the hospital. Mobley floundered in this new role and was eventually fired. He now appeals the grant of summary judgment on his claims against MVH under the Americans with Disabilities Act ("ADA"). While we affirm the district court's conclusion that the transfer itself was not discriminatory, we reverse and remand for further proceedings on his failure-to-accommodate and interactive process claims.

No. 14-3665
*Mobley v. Miami Valley Hospital*

## I.

Bryan Mobley has a number of serious physical conditions. In the words of his primary care physician, Dr. Paul Martin, he "suffered a cerebral abscess with left parietal injury" years before the events giving rise to this case. He has also endured "a stroke and two brain surgeries[,]" as well as "a number of automobile accidents." As things currently stand, he lives with "a seizure disorder, hypertension, and migraine cephalgia, as well as a liver condition that causes him to have elevated ammonia levels[.]"

Perhaps as a result of these misfortunes, Mobley exhibits several behavioral difficulties. According to his wife (a registered nurse), he lacks the comprehension abilities of an adult and has very limited abilities to read, write, do basic arithmetic, or use technology. While he "is more confident and comfortable doing repetitive and simple tasks[,]" he has difficulty "comprehend[ing] new or complicated rules." His working memory is significantly impaired, and he can become confused easily. He also has a speech impediment, manifested in a halting, repetitive conversational style, and often finds it difficult to articulate his thoughts. Needless to say, these difficulties affect his ability to engage and interact with others. And, but for prescription medication, he would sometimes "stay awake for days at a time."

Despite these maladies, Mobley has not remained out of the workforce. The Environmental Services department of MVH hired him as a housekeeper in 2006. His job, like those of the other housekeepers in the Environmental Services department, had the formal title of "Environmental Technician." The job description for an Environmental Technician encompassed a variety of cleaning tasks for which the department had responsibility, and the department managers had discretion to rotate employees among these tasks. But as a practical matter, from 2008 to early 2012 Mobley's primary (and perhaps only) responsibility was to clean

approximately six surgical suites, a role we will term the "surgery position." His supervisor during this period, Joseph Zippilli, completed periodic reviews of Mobley's performance, finding in each that Mobley met or exceeded departmental expectations in all categories of evaluation. Zippilli continued to give Mobley positive reviews in October 2011, even though he had recently met with Mobley to discuss reports of arguments between Mobley and surgical staff.

Things changed for Mobley when MVH decided to reassign him to "patient trash" duty in early February of 2012. In this role, Mobley had responsibility for removing and replacing trash bags from patient rooms and other areas on two floors of the hospital. A time study, conducted by MVH and based on national standards, found that a typical employee would have ample time to complete these duties in a typical work day, and other MVH employees assigned to this position had no problems doing so. But Mobley struggled in this new role, usually managing to service only a quarter of the rooms to which he was assigned in any one day.

When Zippilli and other MVH managers met with Mobley to discuss his problems with the job, he conveyed his belief that it was "too much" work for him to handle. Mobley continued to struggle in the new position, and by mid-February he submitted a note from Dr. Martin recommending, "in [his] medical opinion," that Mobley be returned to "his prior job responsibilities." MVH responded by placing Mobley on a "developmental plan" outlining his duties in the position, but also warning that he would be subject to discipline if he failed to improve. At another meeting with management a few days later, Mobley asked to be return to his duties in the surgery position and submitted a letter to that effect. The day after this meeting Mobley's wife contacted MVH on her own to ask management to adapt his schedule to his various ailments and "life time condition[.]" And on the next to last day of February Mobley brought another note, this time from his neurologist, Dr. Vandersluis, concurring in Dr. Martin's

opinion and recommendation for reassignment. After receiving this note MVH revised its developmental plan to remove some (but by no means most) of the rooms for which Mobley's trash collection duties. Mobley still failed to complete his new duties, however, and MVH issued a "corrective action" threatening his future employment. In its final attempt to resolve the problem, MVH assigned another housekeeper, Kenny Emmons, to demonstrate Mobley's duties and observe his work. This arrangement lasted only a few days and did not improve Mobley's performance. On March 6, 2012, Mobley submitted an internal grievance form once again asking that he be returned to the surgery position. But instead of meeting this request, MVH terminated Mobley's employment for poor performance on March 8, 2012.

Mobley filed suit in Ohio state court, alleging violations of the ADA and corresponding Ohio statutes. The complaint described discrimination through the reassignment to the patient trash position, a failure to accommodate his disability, and a failure to engage in an interactive process to reach a reasonable accommodation. Mobley would later try to explain the basis of the suit in his own words as follows:

> Q: Okay. And can you tell me why you filed that claim?
> A: Well, and basically my medical condition, that up and best—wait a minute—I'll get it out. That—that I filed that claim and up and turn around up and knowing—that—that up and basic—that the supervisors knew, you know, my medical condition. And—I hope I'm answering it right. And I guess I don't know how to answer this. You know, can I just—well—wait a minute—wait a minute—can you—can you answer it another way?

MVH removed the suit to federal court and moved for summary judgment. After Mobley responded, the district court granted summary judgment on all claims. The court found genuine disputes of fact that Mobley was disabled but dismissed the last two claims because "Mobley points to nothing explaining how a return to cleaning surgery suit[es would] accommodate[] any limitations arising from his impairments." The court also held that the transfer to the patient

trash position could not itself be discriminatory because it was not an adverse employment action. Mobley timely appealed.

## II.

We review *de novo* a grant of summary judgment. *Newman v. Twp. of Hamburg*, 773 F.3d 769, 771 (6th Cir. 2014). We grant Mobley all favorable inferences that we can reasonably draw from the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And we will affirm if the record shows no genuine dispute of material fact and that MVH is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a), (c).

## III.

The ADA bars discrimination "against a qualified individual on the basis of disability in regard to the . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute embraces an expansive view of discrimination that includes, "among other theories, disparate treatment, harassment, and failure to accommodate." *Wells v. Chrysler Grp. LLC*, 559 F. App'x 512, 515 (6th Cir. 2014) (citing, *inter alia*, 42 U.S.C. § 12112(b)); *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 n.5 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc). Since the crux of these cases is often the thorny issue of the employer's motivation, an ADA plaintiff may prove his claim either through direct evidence, *e.g.*, an admission of discriminatory intent, or through indirect evidence that will then shift the burden of production to the defendant to justify its actions. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998); *Monette*, 90 F.3d at 1178. Here, Mobley asserts that MVH discriminated against him in three ways: by effectively demoting him through a transfer to the patient trash position, by failing to reasonably

accommodate his disability, and by failing to engage in an interactive process to reach an accommodation. We consider each claim in turn.

## A.

For his first claim of discrimination to survive summary judgment, Mobley must raise genuine disputes on three issues:[1] (1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability.[2] *Henschel v. Clare Cnty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013). We can quickly dispose of Mobley's demotion claim because the record does not support a reasonable inference that his transfer to the patient trash position, by itself, was an adverse employment action. *See Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 n.1 (6th Cir. 2002).

An act by the employer must be "materially" adverse to the interests of a reasonable person in the plaintiff's position. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006), *aff'g* 364 F.3d 789 (6th Cir. 2004) (en banc). Mobley does not suggest that his reassignment changed his title, salary, benefits, or shift hours, and we typically do not view such moves as materially adverse. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). A jury, however, might infer an objectively intolerable transfer if the new job is "more arduous[,]" *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir. 2004) (en banc), or if a significant diminution of responsibilities indicates a loss of prestige, *Kocsis*, 97 F.3d at 886–87. Mobley contends the patient trash position was both objectively more

---

[1] The parties do not dispute that MVH is a covered entity for purposes of 42 U.S.C. § 12112(a).

[2] Our analysis of Mobley's ADA claims applies with equal force to his claims under Ohio law. *See Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012).

No. 14-3665
*Mobley v. Miami Valley Hospital*

arduous and less prestigious than the surgery position, but the record simply does not support his contentions.

We find unpersuasive his argument that cleaning patient rooms was more physically demanding to a reasonable person. Mobley himself stated under oath that "[t]he new job was more work than [his] prior job" and that "[t]he second job was . . . like a race horse" in that he would be "racin' to get it done[.]" And he clearly struggled with the job, as he could service only a fraction of the rooms on his two assigned floors during any shift. But his *personal* difficulty with the job does not in and of itself raise a genuine dispute that the position is *objectively* intolerable. *Cf. Kocsis*, 97 F.3d at 879–80, 886–87 (affirming summary judgment for defendant despite plaintiff's testimony that her new assignment was "more physically demanding"). We have held only that the physical demands of a new position rose to the level of objective intolerability where the record evinced a consensus among employees that the job was more taxing, *see White*, 364 F.3d at 792–93, or where the job exposed the plaintiff to patently dangerous conditions, *see Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 919–20 (6th Cir. 2014); *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342–43 (6th Cir. 2001). Here, though, neither condition obtains. Mobley concedes that "[o]ther employees had no problems completing the job tasks" of the patient trash position, and at least some employees apparently found the assignment tolerable, if not preferable to other housekeeper roles. Nor does Mobley provide any reason that his new job was somehow dangerous to most employees. We therefore decline Mobley's invitation to expand objective intolerability to any situation in which an individual employee may not perform well.

Mobley's contention that his reassignment cost him prestige is similarly flawed. Although he subjectively considered the reassignment a demotion, his opinion alone cannot

No. 14-3665
*Mobley v. Miami Valley Hospital*

establish that the new position was objectively inferior. *See Deleon*, 739 F.3d at 921; *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) ("[A] plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action."). Without any other opinions on the relative status of the positions, Mobley asks us to infer a loss of prestige from differences in the requirements and qualifications of the roles. He points first to statements by Zippilli that "[t]here's a difference" in the "steps that [employees would] perform" in each task, but Zippilli did not even explain which of the two jobs involved more, or more difficult, "steps." And even if cleaning the operating rooms could be said to involve more subsidiary tasks, that fact tells us nothing meaningful about its desirability relative to Mobley's later position. *Cf. Thompson v. City of Waco*, 764 F.3d 500, 504 (5th Cir. 2014) ("[T]he mere loss of some job responsibilities does not constitute an adverse employment action.") (internal quotation marks omitted). Finally, Mobley asserts that the surgery position was more prestigious because it required more training. The record does show that MVH would have a more experienced housekeeper observe the work of a new transfer to the surgery role for a few days, but that was to make sure that the new worker knew things like "where to fill their buckets[,]" "where to get a mop[,]" or "what to wipe down in the room[.]" That information hardly indicates skill, much less an objective level of prestige among the personnel of MVH's Environmental Services department.

Mobley also contends that a jury could infer that MVH "'set [him] up to fail'" by transferring him to a position in which it knew he could not succeed. This argument might best be construed as a constructive discharge claim, which is analytically distinct from the presumptively non-discriminatory lateral transfers discussed in *Kocsis*. *See* 97 F.3d at 886–87. In any event, the outcome is the same because under either framework Mobley must essentially

No. 14-3665
*Mobley v. Miami Valley Hospital*

show that the working conditions would be intolerable to a reasonable person. *See id.* at 887; *see also Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001). For the reasons noted above, Mobley cannot meet that burden. We therefore conclude that Mobley has failed to raise a genuine dispute that his reassignment alone constituted an adverse employment action.

**B.**

We turn next to Mobley's failure-to-accommodate claim. Mobley has the initial burden to show (1) that he is disabled, (2) that he is otherwise qualified, (3) that his employer knew or should have known of his disability, (4) that he requested a reasonable accommodation, and (5) that his employer failed to provide an accommodation. *E.g., Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672, 680 (6th Cir. 2014) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). An individual is "qualified" if, "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111(8). Once Mobley has built his *prima facie* case, MVH can still defeat the claim by showing an undue hardship to its business. *See, e.g.*, *Rorrer v. City of Stow*, 743 F.3d 1025, 1038–39 (6th Cir. 2014). On appeal, Mobley argues that reassignment to the surgery position would reasonably accommodate his disability. MVH contends that he cannot perform the essential functions of any position and that he failed to request a reasonable accommodation.[3]

---

[3] MVH does not argue that summary judgment is appropriate on Mobley's status as a disabled person, except to claim that he admitted in a deposition that he was not disabled. Looking at the wider context of Mobley's reply, this does not seem so clear. For one thing, Mobley—a man whose cognitive limitations are the heart of this case—may not have been using the word "disabled" in the technical legal sense of his examiner, especially since he had, moments before, referred to himself as a "special needs person" who had endured "a stroke and two brain surgeries[.]" *See Spaulding v. Conopco, Inc.*, 740 F.3d 1187, 1196 (8th Cir. 2014) ("We consider only admissible evidence and disregard portions of various affidavits and depositions that . . . purport[] to state legal conclusions as fact." (alterations in original) (citation and internal quotation marks omitted)); *cf. Salgado v. Atl. Richfield Co.*, 823 F.2d 1322, 1327 (9th Cir. 1987) (instructing district court to ignore party's "own characterization of the 'legal' cause of his discharge[]" upon remand). And during a more cogent moment Mobley asserted that he *is* disabled and suffers from seizures, headaches, a speech impediment, and memory and comprehension problems. Most

No. 14-3665
*Mobley v. Miami Valley Hospital*

The ADA expressly contemplates "reassignment to a vacant position" as a reasonable accommodation. 42 U.S.C. § 12111(9)(B). The reasonableness of a reassignment is intuitive: "If an employee, because of his disability, can no longer perform the essential functions of the job that he or she has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker." *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 256 (6th Cir. 2000). Here, Mobley requested reassignment to the surgery position through the note from Dr. Martin,[4] in the concurring note from Dr. Vandersluis, in a meeting with MVH managers, and in his employee grievance to MVH management. MVH rejected that request.

Since Mobley worked in the surgery position for several years, it would be reasonable to infer that MVH thought he was fulfilling the essential functions during that time, however those functions might be characterized. MVH responds that it involuntarily transferred him to patient trash duty because his presence in surgery no longer met the "operational needs" of the housekeeping department. But the deposition testimony it cites in support of this claim does not explain why these needs would go unmet, except to say that he could not return to surgery "[b]ecause he was assigned to the patient trash position." Furthermore, this claim is flatly contradicted by the fact that Zippilli allowed other employees to apply for the now-open surgery position after moving Mobley to patient trash duty.

---

importantly, though, the record contains other evidence, including an affidavit from Dr. Martin, that Mobley has "substantial cognitive and neurological impairments" that substantially limit "his ability to speak, think, and communicate." That should suffice to raise a genuine dispute that he is disabled. *See* 29 C.F.R. § 1630.2(g)–(i).

[4] Read strictly, the note from Dr. Martin only asks that Mobley be returned to his "prior job responsibilities" of cleaning "40 rooms[,]" which would match neither the surgery position nor the patient trash position. Despite this factual error, MVH appears to have construed the request as one to return to the surgery position. This would be congruent with MVH policy, as described by one of its managers, to consider a doctor's note to be a formal request for accommodation.

No. 14-3665
*Mobley v. Miami Valley Hospital*

Perhaps more persuasive is MVH's second response that the personality conflicts between Mobley and surgical staff disqualified him. There is certainly evidence that Mobley had some arguments with surgical staff in 2011. (MVH claims that these spats occurred because Mobley "became more confrontational"; Mobley denies that he did so.) But even Zippilli stated that "[m]ost of these [incidents] are coaching situations" of the type that MVH managers would handle "on a fairly regular basis[.]" That hardly describes a reason to disqualify Mobley from the job altogether. Mobley's real saving grace, however, is evidence that Zippilli met with Mobley to discuss these incidents in September 2011, but one month later completed a performance evaluation in which he rated Mobley as meeting or exceeding MVH expectations in *all aspects* of his job. These favorable marks included "[e]ssential" performance categories like maintaining a "positive work environment[.]" A jury could conclude from this evaluation that Mobley could fulfill all essential functions of the surgery position.[5]

MVH contests Mobley's qualified status on one final ground. The hospital correctly notes that all employees with Mobley's formal title (Environmental Technician) "have the same primary job description and are expected to be able to perform all positions within the department." Though the argument is not fully developed, the implication seems to be that the ability to rotate assignments is itself an essential function of the job; put differently, MVH suggests that there are not in fact two distinct jobs for cleaning operating rooms and removing patient trash. This argument fails to rebut the fact that Mobley had only surgery duties "for several years[]" and the resulting inference that Environmental Technicians had *de facto* permanent assignments to particular duties. *See Kiphart v. Saturn Corp.*, 251 F.3d 573, 585–86 (6th Cir. 2001) (holding that a jury could consider whether rotating among assignments was an

---

[5] A jury could conclude based on the same evidence that reassigning Mobley to the surgery position would not create an undue hardship for the hospital.

essential function where, "as a practical matter, very few if any teams fully rotated tasks"); *see also Rorrer*, 743 F.3d at 1040 (Evidence "that a job function is actually marginal may effectively rebut a written description that states that a job function is essential."). Moreover, both Mobley and Zippilli tended to refer to the assignments as distinct jobs or job descriptions. The parties seemed to have considered the two assignments to be distinct jobs with distinct functions, and a jury could do the same.

As its last challenge to this claim, MVH presents what might be a novel legal argument in this circuit. Relying mostly on a pair of cases from the First Circuit, MVH contends that Mobley's request for reassignment to surgery was not sufficiently "linked to" his disability. Appellee Br. 41–42 (citing *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007); *Estades-Negroni v. Assocs. Corp. of N. Am.*, 377 F.3d 58, 64 (1st Cir. 2004)). As an analytical matter this argument does not fit neatly into the elements of a failure-to-accommodate claim that we have derived from the statute, but it can be read to address either of two aspects of Mobley's *prima facie* case. First, one can take this as an argument that the requested transfer does not accommodate Mobley's *disability*, but instead his personal preferences or attitude. *Cf. Wohler v. Toledo Stamping & Mfg. Co.*, No. 96-4187, 1997 WL 603422, at *6 (6th Cir. 1997) ("[A]ny accommodation should logically be linked to enabling the individual with a disability to overcome limitations or barriers he faces due to the disability."). The district court took this view when it granted summary judgment for lack of "evidence that the limitations resulting from Mobley's disability had any impact on his failure to complete the tasks of the [patient trash] position." We find this conclusion flawed. For one thing, it ignores the considered opinion of Dr. Martin—explained in short in the note passed on to MVH and more extensively in Dr. Martin's affidavit—that Mobley's significant impairments individually or collectively made him

better suited to the surgery position. Zippilli might have thought Mobley's difficulties stemmed from poor attitude or lack of effort, but it is far from clear that he understands Mobley better than his primary care physician. And one can infer an equally plausible explanation, as Mobley's wife avers, that his cognitive limitations, difficult as they are to measure or specify, impeded his ability to adapt to new situations and "learn new things" or "comprehend new or complicated rules[,]" in this case his duties in the patient trash position. We leave it to the jury to decide which explanation is more compelling.

Second, we might construe MVH's "linked to" contention as an argument that Mobley's *request* lacked some critical quality. This seems the better reading of the First Circuit authority cited by MVH; the fundamental thrust of those cases is that the employee must put the employer on notice that his requested action is meant to address his disability. *See Freadman*, 484 F.3d at 102–03 ("The appropriate inquiry is whether defendant knew or reasonably should have known that the reason for Freadman's request was her disability."); *Estades-Negroni*, 377 F.3d at 64 ("An employer need not provide accommodations where it does not know an employee has a disability."). But even described this way we find MVH's argument unpersuasive.

We have generally given plaintiffs some flexibility in how they request an accommodation. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (holding that plaintiff's "requests, both written and oral," presented a question for the jury). We have also held that a jury might infer from the context of a request that it is driven by medical restrictions. *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004). Again, Mobley provided MVH with Dr. Martin's opinion that Mobley's several impairments necessitated a change in jobs, and Mobley later provided a second note from Dr. Vandersluis concurring with Dr. Martin's opinion. As one might expect, our case law considers letters from physicians

No. 14-3665
*Mobley v. Miami Valley Hospital*

sufficient to notify an employer of the need to accommodate a disability. *See Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783–84 (6th Cir. 1998); *see also Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009) (noting that an employee may put an employer on notice "of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor"). And to the extent that MVH demands a more granular explanation of the medical need to reassign Mobley, a jury could justifiably doubt that MVH managers would have been aided by the type of detail found in Dr. Martin's later sworn statement, which clarified that Mobley "suffered a cerebral abscess with left parietal injury which permanently affected his mental condition."

In any event, Mobley claimed under oath that Zippilli always knew of his stroke,[6] surgeries, and enduring symptoms, and MVH *at the latest* learned of Mobley's medical condition from the February 2012 email from Mobley's wife imploring the hospital to accommodate a man with "a life time condition" characterized by "[a] stroke[,] two brain surgeries, a limp, total confusion, [and] not [being] able to form words" effectively. MVH thus had ample reason to know that physical and mental impairments drove Mobley's request for a job change.

Since Mobley has demonstrated a genuine dispute of fact on each part of his *prima facie* case, and since MVH does not attempt to show conclusive hardship to its business, we hold that summary judgment was not proper on Mobley's failure-to-accommodate claim.

## C.

Finally, we look to Mobley's interactive process claim. Although the statute does not mention an "interactive process," both Mobley and MVH have an obligation to discuss reasonable accommodations in good faith. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862,

---

[6] Zippilli himself admitted, somewhat vaguely, that Mobley's "neurological condition . . . became apparent over time."

No. 14-3665
*Mobley v. Miami Valley Hospital*

871 (6th Cir. 2007). To recover under this theory, Mobley must show that he proposed a reasonable accommodation and would have been reasonably accommodated but for MVH's refusal to participate in good faith. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 987 n.19 (6th Cir. 2011). As explained above, a jury could find that Mobley was qualified and proposed a reasonable accommodation. Even so, MVH is not required to offer a different accommodation to discharge its duty of good faith. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202–03 (6th Cir. 2010). But a counter-proposal might evince the employer's good faith. *Id.* at 203; *see Lafata v. Church of Christ Home for the Aged*, 325 F. App'x 416, 423 (6th Cir. 2009) (reversing summary judgment for employer that offered employee only the option to stay in her current job or leave the company).

MVH made at least some efforts to engage in a good faith dialogue with Mobley, and it might deserve summary judgment on this claim if it addressed Mobley's proposed accommodation. But the record does not support that view. Indeed, the record suggests that MVH rejected his transfer request before dialogue truly began. At most, MVH offered to help Mobley by assigning Kenny Emmons to him as an observer or trainer and by placing Mobley on a developmental plan. Mobley himself asked for Emmons's observation period to end, but it is not unreasonable to think that Mobley's particular impairments might have necessitated something more than a few days with a coworker unversed in helping the disabled. Similarly, the developmental plan reduced some of Mobley's workload in the patient trash position and tried to clarify his responsibilities, but even under the revised plan Mobley was unable to complete more than a quarter of his assigned work. Though we by no means conclude that MVH is *certainly* to blame for the failure to reach a mutually acceptable accommodation, a reasonable jury *could* conclude that MVH did not in good faith consider Mobley's proposed transfer and

No. 14-3665
*Mobley v. Miami Valley Hospital*

that further dialogue would have been necessary to reach an agreeable outcome. We therefore reverse summary judgment on this claim as well.

## IV.

For the reasons above, we affirm summary judgment on Mobley's demotion claim but reverse summary judgment on his remaining ADA claims and remand for further proceedings consistent with this opinion.